IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PERRY GLYN FREEMAN,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:14-CV-2004-G-BK |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| Defendant. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3*, the undersigned now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that *Plaintiff's Motion for Summary Judgment*, Doc. 16, be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 18, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

### I. BACKGROUND[1]

**A. Procedural History**

Plaintiff seeks judicial review of Defendant's final decision denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff filed for DIB and SSI in January 2011, claiming that he became disabled in December 2010. Doc. 13-6 at 3-5, 14-16. Plaintiff's application was denied at all administrative levels. Doc. 13-3 at 2-7, 18-38; Doc. 13-4 at 2-5; Doc. 13-5 at 12-15. Plaintiff now appeals to this Court pursuant to 42 U.S.C. § 405(g).

**B. Factual Background**

At the time of his alleged onset of disability, Plaintiff was 44 years old. Doc. 13-6 at 3.

---

[1] The following background comes from the transcript of the administrative proceedings, Docs. 13 to 13-12 and 14 to 14-7.

He has an 11th-grade education and was previously employed as a waste management technician, security supervisor, and a pest control salesman/technician. Doc. 13-3 at 51-52. Plaintiff suffers from liver disease, diabetes, degenerative disk disease, and bipolar disorder. Only Plaintiff's physical impairments that are relevant to the issues now before the Court are recounted here.

Based on his review of medical records from 2010 to 2011, state agency consultant Dr. Frederick Cremona assessed Plaintiff's residual functional capacity ("RFC") with the following exertional limitations: occasionally lifting or carrying 50 pounds and frequently lifting or carrying 25 pounds; standing or walking for six hours and sitting for six hours in an eight-hour workday; frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but only occasionally climbing ladders or ropes due to lumbar pain; and unlimited pushing or pulling. Doc. 13-10 at 36-37. Dr. Cremona noted that his RFC assessment took Plaintiff's allegations of pain into account. Doc. 13-10 at 40. Dr. Cremona also found that Plaintiff's report of limited activities of daily living not wholly supported by the medical evidence. Doc. 13-10 at 42. On August 5, 2011, Dr. Laurence Ligon confirmed Dr. Cremona's RFC assessment. Doc. 14-3 at 29.

From 2011 to 2013, Plaintiff was treated by various physicians at Parkland Hospital, and diagnosed on several occasions with liver disease -- mainly cirrhosis and hepatitis C, which led to hepatic encephalopathy.[2] *E.g.*, Doc. 14-5 at 102; Doc. 14-6 at 56. Most of Plaintiff's liver-related symptoms, which included edema, asterixis, ascites, and distension,[3] were intermittent.

---

[2] Hepatic encephalopathy is "marked by disturbances of consciousness that may progress to deep coma (hepatic coma), psychiatric changes of varying degree, flapping tremor, and fetor hepaticus." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 622.

[3] Edema is swelling caused by excess fluid in body tissues. *Edema*, U.S. NAT'L LIBRARY OF

2

*See* Doc. 14-5 at 6, 9, 14, 88, 114, 136; Doc. 14-6 at 58 (trace edema); Doc. 14-5 at 25, 53, 58, 72, 85, 93, 98; Doc. 14-7 at 34 (no edema); Doc. 14-5 at 14, 18 (asterixis present); Doc. 14-5 at 25, 39, 53, 58, 72, 77, 85, 93, 98, 105, 111, 118, 124; Doc. 14-6 at 58, 79; Doc. 14-7 at 34 (asterixis absent or not mentioned in treatment notes); Doc. 14-5 at 9, 14, 18, 93; Doc. 14-6 at 58 (ascites present); Doc. 14-5 at 25, 39, 53, 72, 77, 85, 98, 113, 118, 126; Doc. 14-6 at 66, 79; Doc. 14-7 at 34 (ascites absent or not mentioned); Doc. 14-5 at 14, 39, 53, 72, 93, 136 (distension); Doc. 14-5 at 6, 25, 59, 85, 98, 113; Doc. 14-6 at 66 (no distension).  Aside from these symptoms, Plaintiff experienced some memory loss and showed mild confusion in June 2012.  Doc. 14-5 at 15, 17.

In November 2012, after Plaintiff's hearing before the ALJ, Dr. Christie Choi submitted a medical statement regarding Plaintiff's liver disease.  Doc. 14-6 at 52-53.  Dr. Choi noted that though she had met Plaintiff only once, she reviewed records and offered a statement at the request of Plaintiff's representative.  Doc. 14-6 at 52.  In relevant part, as to listing 5.05(B), Dr. Choi observed that Plaintiff "definitely has ascites on exam despite being on high dose diuretics," and noted a history of "needing paracentesis in the past to help with this accumulation of fluid."  Doc. 14-6 at 52.  Dr. Choi indicated that Plaintiff's serum albumin level was 3.2 and INR was 1.1.  Doc. 14-6 at 52.  Regarding listing 5.05(F), Dr. Choi stated:

> This is perhaps the patient's most important complication of his cirrhosis to my knowledge.  He . . . has had several episodes of hepatic encephalopathy.  He has been admitted twice for these symptoms in the past 2 months.  We are attempting to get patient assistance [sic] approval for adding Rifaximin to his lactulose regimen to treat this.  He was admitted 1 month ago and 2 months ago Texas Regional per the patient and treated for what sounds like encephalopathy.

---

MEDICINE, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0022960 (last visited May 11, 2015).  Asterixis is an involuntary tremor, especially in the hands, common to hepatic encephalopathy.  STEDMAN'S MEDICAL DICTIONARY 80400.  Ascites is the accumulation of serous fluid in the peritoneal cavity.  STEDMAN'S 78480.

Doc. 14-6 at 52.

Plaintiff's diabetes was treated regularly between 2011 and 2013. Physicians expressed some difficulty in regulating Plaintiff's diabetes with insulin. Doc. 14-5 at 6 (noting that Plaintiff's sugars were "grossly out of control"); Doc. 14-5 at 9 (noting that continued insulin "has been ineffective"). Physicians also expressed suspicion on multiple occasions that there could be something wrong with Plaintiff's blood sugar meter or that Plaintiff may not be taking insulin reliably. Doc. 14-5 at 49, 86. Plaintiff routinely failed to furnish his blood sugar meter during his physical examinations. Doc. 14-5 at 50, 86. Physicians expressed the dangers of Plaintiff's smoking habit on multiple occasions, and Plaintiff indicated at least once that he was "not interested" in quitting. Doc. 14-5 at 40. 44, 96, 116. He further noted on one occasion that his "eating habits could be improved." Doc. 14-5 at 8.

Plaintiff's degenerative disk disease was also recurrent during this same time period, both as to his neck and his lower back. As with his liver disease symptoms, his back pain symptoms appeared intermittent. *See* Doc. 14-5 at 33, 58, 98 (back pain reported); Doc. 14-5 at 24, 118, 124 (no back pain reported); *see also* Doc. 14-5 at 18, 39, 124-26 (normal range of motion indicated). Plaintiff's spinal x-ray in March 2011 showed minimal degenerative spondylosis in the lumbar spine from L2 to L5, as well as moderate degenerative spondylosis and disk space narrowing at L5-S1, where Plaintiff's lumbar spine meets the sacrum. Doc. 13-9 at 55. Dr. Gerald Matchett conducted an MRI of Plaintiff's lumbar spine in January 2012. Doc. 14-5 at 33, 61-64. At that time, Plaintiff indicated that he was "doing about as well as he [had] been before." Doc. 14-5 at 61. Dr. Matchett observed that the MRI "basically showed degenerative disk disease, specifically at L5-S1." Doc. 14-5 at 62. Dr. Matchett noted that: (1) there was no severe neural foraminal or severe central canal stenosis; (2) the degenerative changes "are very

common things to find on a scan" and are "within the range of normal for age;" and (3) "[o]verall, this patient's health status appears mostly unchanged." Doc. 14-5 at 62. In light of Plaintiff's other impairments, Dr. Matchett recommended a conservative course of treatment including physical therapy. Doc. 14-5 at 64.

In April 2012, Dr. Michael Bolesta reviewed a July 2011 MRI of Plaintiff's cervical spine that showed reversal of cervical lordosis with disk degeneration throughout with narrowing at C5 to C7, a large left paracentral disk with left neural foraminal stenosis at C3 to C4, a broad-based disk with left neural foraminal stenosis at C4 to C5, a broad-based disk with central canal stenosis at C5 to C6, and a broad based disk with central canal stenosis and bilateral foraminal stenosis at C6 to C7. Doc. 14-5 at 33. Dr. Bolesta also noted that Plaintiff denied tenderness to palpation over the cervical, thoracic, or lumbar spines, and that he had a full range of motion of both the cervical and lumbar spines. Doc. 14-5 at 33.

### C. The ALJ's Findings

In March 2013, the ALJ issued a decision unfavorable to Plaintiff. Doc. 13-3 at 15. At step one, she found that Plaintiff had not engaged in substantial gainful activity since December 15, 2010. Doc. 13-3 at 20. At step two, the ALJ found that Plaintiff had the following severe impairments: chronic hepatitis C with cirrhosis, diabetes mellitus, degenerative disk disease of both the cervical and lumbar spine, and bipolar disorder. Doc. 13-3 at 20. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1. Doc. 13-3 at 21.

The ALJ noted Dr. Choi's statement and then discussed why it did not support Plaintiff's allegations of listing equivalence as follows: (1) Dr. Choi did not document any paracentesis, nor is there any in the record, and (2) Dr. Choi noted Plaintiff's encephalopathy but did not discuss

any applicable subsections of listing 5.05(F). Doc. 13-3 at 29. The ALJ concluded that Dr. Choi's statement did not clearly indicate that Plaintiff's liver disease meets or equals listing 5.05. Doc. 13-3 at 29. The ALJ went on to note an "inconsistency of the doctor's reports with the record as a whole," and declined to give the statement controlling weight as a result. Doc. 13-3 at 29.

The ALJ further found that Plaintiff retained the RFC to perform medium work activity as consistent with Dr. Cremona's RFC assessment. Doc. 13-3 at 23. At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. Doc. 13-3 at 35. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Doc. 13-3 at 36. Specifically, the ALJ found that Plaintiff can perform the jobs of security guard, cashier, and mail clerk. Doc. 13-3 at 37.

## II. LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the

issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920(b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

**A.  The ALJ's Step 3 findings are supported by substantial evidence.**

Plaintiff argues that the ALJ failed to properly weigh all of the medical opinions in evidence at Step 3.  Doc. 16 at 7.  Specifically, Plaintiff posits that Dr. Choi's opinion makes it clear that Plaintiff meets listed impairments 5.05(F)(1), (3).  Doc. 16 at 8, 10-12.  Plaintiff insists that the state agency consultants' opinions, upon which the ALJ relied in finding that the 5.05 listings were not met, are not based upon the complete record, as Plaintiff submitted over 260 pages of records after the consultants' reports were issued.[4]  Doc. 16 at 8-9.  Plaintiff also contends that in finding that Plaintiff does not meet Listing 5.05(F), the ALJ improperly relied on his own evaluation of the medical evidence, despite lacking the requisite expertise.  Doc. 16 at 12-13.  Lastly, Plaintiff maintains that the ALJ failed to accord Dr. Choi's opinion the proper weight under the treating physician rule; that is, in rejecting Dr. Choi's opinion, the ALJ should have given a specific reasons for doing so or at least discussed the factors listed in 20 C.F.R. § 404.1527.  Doc. 16 at 14-16.

Defendant maintains that the ALJ was correct in finding that Plaintiff did not meet Listing 5.05F(1) because the record does not contain enough medically-verified instances of Plaintiff experiencing behavioral or mental abnormalities or asterixis.  Doc. 18 at 8-9.  As to the weight given Dr. Choi's opinion, Defendant argues that Dr. Choi only discussed Plaintiff's

---

[4]  Plaintiff highlights purported errors in the ALJ's findings related to Listing 5.05(B), but does not explicitly contend in this appeal that his impairments met or equaled the Listing.  Doc. 16 at 9-10.  Plaintiff also does not appear to take issue with the ALJ's findings on Listing 5.05(G) even though he discusses them at length.  He points out that the ALJ discounted Dr. Choi's opinion because she discussed Plaintiff's MELD score but not his CLD score, which is relevant to Listing 5.05(G), despite the fact that the two scores are calculated the same way, thus highlighting the ALJ's unfamiliarity with these medical issues.  Doc. 16 at 12.  Plaintiff's arguments are unavailing, as the actual numerical score determined by Dr. Choi is 14, far less than the requisite threshold of 22.  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 5.05(G); Doc. 14-6 at 52.

medical status, and did not offer an opinion regarding whether Plaintiff's impairments met a Listing, Plaintiff's RFC, or Plaintiff's any mental of physical limitations resulting from Plaintiff's impairments. Doc. 18 at 9-10. Thus, Defendant concludes that the ALJ was not required to accord great weight to Dr. Choi's opinions under the regulations. Doc. 18 at 10.

Listing 5.05(F) for hepatic encephalopathy requires:

1. Documentation of abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness (for example, confusion, delirium, stupor, or coma), present on at least two evaluations at least 60 days apart within a consecutive 6-month period," and

2. History of transjugular intrahepatic portosystemic shunt (TIPS) or any surgical portosystemic shunt; or

3. One of the following occurring on at least two evaluations at least 60 days apart within the same consecutive 6-month period as in F1:

   a. Asterixis or other fluctuating physical neurological abnormalities; or

   b. Electroencephalogram (EEG) demonstrating triphasic slow wave activity; or

   c. Serum albumin of 3.0 g/dL or less; or

   d. International Normalized Ratio (INR) of 1.5 or greater.

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 5.05(F). "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders v. Sullivan,* 914 F.2d at 614, 619 (5th Cir. 1990).

In the instant case, the record reveals that the ALJ's decision at Step 3 is supported by substantial evidence. As an initial matter, Plaintiff's contention that the ALJ improperly rejected Dr. Choi's statement under the treating physician rule is unsupported. Despite noting at the end of his analysis that Dr. Choi's findings were inconsistent with the record as a whole and, thus, are not entitled to controlling weight, the ALJ's nonetheless considered Dr. Choi's findings in

concluding that Plaintiff's did not meet Listing 5.05.  Doc. 13-3 at 29 ("[T]he treating source's statements do not clearly indicate that the claimant's liver disease meets or equals listing 5.05."). Having given due consideration and, in effect, controlling weight to Dr. Choi's findings, the ALJ was not required to establish good cause for disregarding them or discuss the factors in 20 C.F.R. § 416.1927.

Even if the ALJ erred in his analysis, Plaintiff's substantive rights were unaffected because the decision is nevertheless supported by substantial evidence.  As to Listing 5.05(F), Plaintiff's hepatic encephalopathy is noted multiple times in the record, but the medical evidence reflects "abnormal behavior, cognitive dysfunction, changes in mental status, or altered state of consciousness," only twice.  On June 13, 2012, Plaintiff was found to have some memory loss and on June 15, 2012, Plaintiff was found to exhibit mild confusion.[5]  Doc. 14-5 at 15, 17. Throughout the remainder of Plaintiff's medical records, his physicians noted time and again that he was alert and oriented.  Doc. 13-8 at 61; Doc. 13-9 at 25, 38, 62; Doc. 13-10 at 10; Doc. 14-2 at 13; Doc. 14-3 at 14; Doc. 14-4 at 6; Doc. 14-5 at 6, 11, 18, 25, 33, 39, 59, 72, 77, 93, 98, 114, 118; Doc. 14-6 at 66, 71.  Plaintiff's arguments to the contrary are unpersuasive.  While Plaintiff argues that one examination in August 2012 revealed distal tremors, Doc. 16 at 11, treatment notes indicate that Plaintiff was *negative* for distal tremors, Doc. 14-6 at 79.  Moreover, the ALJ noted in his discussion that Dr. Choi neglected to address subsection (1).  Doc. 13-3 at 29. Finally, Plaintiff was noted in April 2011 to have "no definite history of HE," but was on lactulose anyway.  Doc. 13-10 at 16.  Thus, based on the evidence presented, Plaintiff failed to

---

[5]  Plaintiff suggests that by stating Plaintiff "had been admitted for encephalopathy symptoms twice in the past two months," Dr. Choi opined "Plaintiff met the criteria for [subsection (1)] of listing 5.05(F)." Dr. Choi's opinion, however, is silent on the specifics of Plaintiff's cognitive or mental functions, which form the true essence of "documentation" as required by subsection (1), not a mere diagnosis of hepatic encephalopathy. Doc. 14-6 at 52; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 5.05(F).

offer proof that he met a mandatory requirement of Listing 5.05(F).

Even if Plaintiff could meet subsection (1) of that listing, he fails on the third. Plaintiff is noted to have asterixis on only one occasion in June 2012. Doc. 14-5 at 14, 18. Though many of Plaintiff's evaluations are silent as to asterixis, multiple evaluations reflect that he either did not have asterixis or experienced symptoms inconsistent with asterixis. Doc. 13-9 at 9; Doc. 13-10 at 16; Doc. 14-5 at 111, 124; Doc. 14-6 at 58. Furthermore, Plaintiff's serum albumin was at all times reported above 3.0 g/dL. *See* Doc. 13-8 at 65 (3.2); Doc. 13-10 at 5 (3.8); Doc. 14-5 at 12 (3.2), 18 & 25 (3.6), 119 (3.5); Doc. 14-6 at 28 (3.3); Doc. 14-7 at 19 (3.5). Likewise, in the reports provided, Plaintiff's INR never rose above the threshold of 1.5. *See* Doc. 14-5 at 18 & 25 & 39 (1.1), 119 (1.2); Doc. 14-7 at 20 (1.2). These values were both noted by Dr. Choi in her statement. Doc. 14-6 at 52.

For the foregoing reasons, the ALJ's finding that Plaintiff does not meet Listing 5.05(F) is based on substantial evidence. Defendant should be granted summary judgment on this ground.

### B. The ALJ's RFC determination is supported by substantial evidence.

Plaintiff argues that the ALJ's RFC finding, which mirrors the state agency medical consultants' RFC findings, is not supported by substantial evidence because a significant portion of his medical records (over 260 pages) were submitted after the state agency reviewers formulated their opinions. Doc. 16 at 17. Relying on *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), Plaintiff asserts that the ALJ should have sought a medical expert to determine Plaintiff's ability to perform work-related functions based upon the record as a whole. Doc. 16 at 19-20. Plaintiff thus maintains that reversal is warranted because the state agency opinions relied on an incomplete record. Doc. 16 at 20. Plaintiff identifies edema as a complication that he surmises

would have changed the ALJ's decision if medically evaluated.  Doc. 16 at 20.  Plaintiff otherwise obliquely argues that the ALJ's RFC did not properly consider this new evidence.  Doc. 16 at 18-19.  Defendant responds that the record contains multiple inconsistencies that the ALJ resolved, as he is permitted to do.  Doc. 18 at 11.  Defendant insists that the ALJ assessed the new medical evidence against the state agency physicians' findings before determining Plaintiff's RFC.  Doc. 18 at 12.

      The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments.  20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  It is the most that a claimant is able to do despite his physical and mental limitations, and the RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work.  20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 416.945(a).  In determining the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe.  SSR 96-8p; 20 C.F.R. § 416.923.

      Upon review, the Court concludes that the ALJ properly considered the cumulative effect of all of Plaintiff's impairments before finding that Plaintiff was not disabled.  Although Plaintiff cites to a large amount of evidence submitted after the state agency review to support his assertion that no medical statements clearly establish his true functional limitations, such as disk bulging revealed in an MRI, pitting edema, a host of medications, and "glucose levels of 297 mg/dl," Doc. 16 at 18, he fails to specify how such evidence might have impacted the ALJ's RFC determination or ultimate finding of no disability.  Plaintiff connects only his edema to the ALJ's RFC determination, stating that this impairment requires him to elevate his legs and limits his standing and walking as well as the amount he can carry.  Doc. 16 at 20.  Considering the entire

record,[6] however, including the 260 pages of records submitted post state agency consultation, the Court finds that the ALJ's RFC finding is supported by substantial evidence. While some of the additional records submitted indicate some change in Plaintiff's overall condition, there is no conclusive evidence of any symptom or condition not considered by the ALJ in arriving at the RFC. For example, as to Plaintiff's liver impairments and allegations of edema, such edema was not present on physical examination more often than it was present. *Compare* Doc. 13-9 at 26, 38, 62, *and* Doc. 13-10 at 10, *and* Doc. 14-2 at 13, *and* Doc. 14-4 at 6, *and* Doc. 14-5 at 25, 53, 58, 72, 85, 93, 98, *and* Doc. 14-7 at 34 (no edema), *with* Doc. 14-3 at 14, *and* Doc. 14-5 at 6, 9, 14, 88, 114, 136, *and* Doc. 14-6 at 58 (edema, or, in two instances, trace edema). Likewise, Plaintiff exhibited distension more often than he did not. *Compare* Doc. 13-9 at 62, *and* Doc. 13-10 at 10, 16, *and* Doc. 14-2 at 13, *and* Doc. 14-4 at 4, *and* Doc. 14-5 at 6, 25, 59, 85, 98, 113, *and* Doc. 14-6 at 66 (no distension), *with* Doc. 13-9 at 10-11, 26, 38, *and* Doc. 14-3 at 14, *and* Doc. 14-5 at 14, 39, 53, 72, 93, 136 (distension).

As to Plaintiff's diabetes, records do indicate that Plaintiff's sugars were "grossly out of control," Doc. 14-5 at 6, but Plaintiff's physician was also "highly suspicious" that Plaintiff was not taking insulin and blood sugars reliably, Doc. 14-5 at 86. Plaintiff's physician was unable to verify Plaintiff's reliability because he "doesn't furnish a log or meter." Doc. 14-5 at 86; *see* Doc. 14-5 at 50 (also indicating that Plaintiff did not furnish a meter). Moreover, Plaintiff admitted his "eating habits could be improved," Doc. 14-5 at 8, and was told numerous times to stop smoking, Doc. 14-5 at 40. 44, 96, 116, but Plaintiff told physicians he was "not interested" in quitting. Doc. 14-5 at 96.

Regarding Plaintiff's degenerative disk disease, he presented with back or neck pain on

---

[6] The Court has not considered evidence that predates Plaintiff's alleged date of onset.

some occasions, Doc. 14-5 at 33, 58, 98, but not on other occasions, Doc. 14-5 at 24, 118, 124. And though Plaintiff argues that the state agency opinions were incomplete without the January 2012 MRI, they were based on the March 2011 x-rays of Plaintiff's lumbar spine, which revealed minimal degenerative spondylosis in the lumbar spine except for moderate degenerative spondylosis at L5-S1.  Doc. 13-10 at 42 (citing Doc. 13-9 at 55).  The MRI also shows degeneration at L5-S1, but Dr. Matchett noted that: (1) there was no severe neural foraminal or severe central canal stenosis; (2) "these are very common things to find on a scan" and are "within the range of normal for age;" and (3) "[o]verall, this patient's health status appears mostly unchanged."  Doc. 14-5 at 62.  Plaintiff himself reported that he was "doing about as well as he [had] been before."  Doc. 14-5 at 61.  Dr. Matchett recommended physical therapy, Doc. 14-5 at 64, but there is no evidence of record indicating that Plaintiff indeed sought physical therapy.  Furthermore, Plaintiff's range of motion or gait was considered normal on multiple occasions.  Doc. 13-8 at 61; Dc. 13-10 at 10; Doc. 14-2 at 13; Doc. 14-4 at 12; Doc. 14-5 at 18, 33, 39, 124-26.

      Finally, while the records indicate that Plaintiff required treatment for his impairments, *e.g.*, Doc. 14-5 at 64 (recommending physical therapy), needing treatment is not the same as being disabled, *see Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.  Plaintiff must show that she was so functionally impaired . . . that she was precluded from engaging in any substantial gainful activity.").  Here, the record reveals that many of Plaintiff's symptoms were treatable.  *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

      Ultimately, as is important here, the ALJ considered the additional evidence in arriving at

his decision, even if the state consultants did not. And while the ALJ's decision was unfavorable to Plaintiff, a review of the whole record reveals it is nonetheless supported by substantial evidence. Defendant, therefore, is entitled to summary judgment on this issue.

## IV.  CONCLUSION

For the foregoing reasons, *Plaintiff's Motion for Summary Judgment*, Doc. 16, should be **DENIED**, *Defendant's Motion for Summary Judgment*, Doc. 18, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on September 15, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE